UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
|
LUTHERAN MEDICAL CENTER, |
|
Petitioner, |
|
-against- | **MEMORANDUM & ORDER**
|
| 03-CV-4289 (CBA)
Tommy G. THOMPSON, Secretary of |
Health and Human Services, and EMPIRE |
BLUE CROSS BLUE SHIELD, |
|
Respondents. |
|
------------------------------------------------------X
AMON, United States District Judge

      Plaintiff Lutheran Medical Center ("Lutheran") has filed suit against the Secretary of Health and Human Services, and Empire Blue Cross Blue Shield, (collectively, "Defendants"). In a first cause of action, Lutheran asserts that the denial of its appeal of a reimbursement decision was arbitrary and capricious. In a second cause of action, Lutheran seeks mandamus relief, pursuant to 28 U.S.C. § 1361, requesting that this Court order the Secretary to reopen the reimbursement decision or to direct recalculation by the intermediary of Lutheran's DSH adjustment for 1997. The parties have filed cross-motions for judgment on the pleadings or, in the alternative, summary judgment. For the reasons stated below, the Court grants summary judgment in defendants' favor.

**I.    Background**

      Medicare is a federally-funded health insurance program for elderly and disabled persons. Medicare Part A is administered by the Center for Medicare and Medicaid Services ("CMS"), a division of the Department of Health and Human Services ("HHS"). CMS does not

1

directly process Medicare claims but rather contracts with entities known as "fiscal intermediaries," who are responsible for determining the amount of reimbursement to which providers are entitled. Defendant Empire Blue Cross Blue Shield ("Empire") is such an entity.

In order to be reimbursed, a provider of services must submit a cost report to the intermediary, who reviews and audits the report. 42 C.F.R. § 413.20. In a Notice of Program Reimbursement ("NPR"), the intermediary informs the provider of the costs that the intermediary has determined to be reimbursable. 42 C.F.R. § 405.1803.

If the provider disagrees with the determination, and the total amount in controversy is at least $10,000, the provider can request a hearing before the Provider Reimbursement Review Board ("the PRRB" or "the Board"), an adjudicatory body within HHS with jurisdiction to hear appeals from final decisions of fiscal intermediaries. 42 U.S.C. § 1395oo. Such requests must be filed within 180 days after notice of the intermediary's final determination. Id. The decision of the PRRB is final unless, within 60 days after the provider has been notified of the Board's decision, the Secretary reverses, affirms, or modifies that decision. Providers may seek judicial review of any final decision by the Board, or any action by the Secretary, by filing a civil action in district court within 60 days of receipt of notice of the Board's final decision or the Secretary's action on the Board's decision. 42 U.S.C. § 1395oo(f)(1). In addition, the Administrator of CMS may, at his own discretion, review any final decision of the Board. 42 C.F.R. § 405.1875(a). A provider may request such review by the Administrator, but must do so within 15 days of the receipt of the Board decision. Id. at § 405.1875(b).

Finally, notwithstanding any right of appeal to the PRRB, a provider may request that an

intermediary reopen a reimbursement decision. See 42 C.F.R. § 405.1885 (2002).[1] Under paragraph (a), a determination "may" be reopened "with respect to findings on matters at issue in such determination" when the provider files a motion to reopen within three years of the determination. 42 C.F.R. § 405.1885(a). Under paragraph (b), the reimbursement determination "must be reopened and revised by the intermediary, if within the 3-year period specified in paragraph (a) of this section, CMS – "(i) [p]rovides notice to the intermediary that the intermediary determination . . . is inconsistent with the applicable law, regulations, CMS ruling, or CMS general instructions in effect . . . at the time the determination or decision was rendered by the intermediary" and CMS "(ii) [e]xplicitly directs the intermediary to reopen and revise the intermediary determination." 42 C.F.R. § 405.1885(b).[2] However, if CMS provides notice that the determination is inconsistent with the applicable law more than three years after the final determination, the intermediary is not required to reopen the determination. 42 C.F.R. § 405.1885(b)(1).

Lutheran Medical Center ("Lutheran") is a hospital that provides services to persons covered under Medicare Part A. As a hospital that is considered a "disproportionate share hospital" under the Medicare Act, it receives additional Medicare reimbursement commonly referred to as a "DSH adjustment." In 1997, the Health Care Financing Administration

---

[1] 42 C.F.R. § 405.1885 was amended effective October 1, 2002, before Lutheran requested that Empire reopen the relevant reimbursement decisions. Unless otherwise noted, this Court will refer to the later, amended version of the regulation.

[2] The prior version of 42 C.F.R. § 405.1885(b) stated that the determination "shall be reopened and revised by the intermediary, if within the aforementioned 3-year period, [CMS] notifies the intermediary that such determination or decision is inconsistent with the applicable law, regulations, or general instructions issued by [CMS] in accordance with the Secretary's agreement with the intermediary." 42 C.F.R. § 405.1885(b) (1998).

("HCFA") issued HCFA Ruling 97-2, which directed intermediaries to calculate DSH adjustments by considering all Medicare "eligible" patient days regardless of whether the Medicare Program actually paid for those days.

On June 26, 2000, Empire, acting as fiscal intermediary, issued an NPR determining the amount of Lutheran's Medicare reimbursement for the 1997 fiscal year (the "FY 1997 NPR"). (Tr. at 9-20.)[3] Lutheran appealed this determination to the PRRB, arguing in its notice of appeal that Empire had failed to follow the HCFA Ruling 97-2, which directed intermediaries to calculate provider reimbursements by considering all Medicare "eligible" patient days regardless of whether the Medicare Program actually paid for those days. (Tr. at 26.)

On February 22, 2001, Empire wrote to the PRRB acknowledging receipt of Lutheran's request for an appeal of the FY 1997 NPR and stating that it believed the issue could be resolved administratively. (Tr. at 25.) On March 7, 2001, PRRB notified Lutheran that, in order to pursue its appeal, a position paper must be filed well in advance of Lutheran's hearing date. (Tr. at 23-24.) Lutheran did not file any position papers with the PRRB. Thus, on February 21, 2002, the PRRB notified Lutheran that it was dismissing Lutheran's appeal for failure to file timely a position paper. (Tr. at 21.) Without any action from the Administrator or the Secretary, this decision became the final decision of the Board. Lutheran did not file a civil action in district court within the proscribed 60-day time limit of 42 U.S.C. § 1395oo.

After receiving notification of the dismissal of the PRRB appeal, Lutheran wrote to Empire on June 28, 2002, indicating that it would seek reopening of its NPR for fiscal year 1997 for purposes of correctly determining the DSH adjustment. (Def. 56.1 Statement (citing Tr. at

---

[3] References with the prefix Tr. refer to pages in the Administrative Record.

7).) Empire responded on July 23, 2002, informing Lutheran that in order to reopen, it "must submit to the [fiscal intermediary] in writing a formal request to reopen the 1997 cost report for the DSH issue and the request must be accompanied by a patient day listing that the Provider wishes to incorporate into the DSH adjustment," and that the request for reopening must be received by June 26, 2003 in order to be timely. The letter also attached schedules which explained precisely what information was needed in the patient day listing. (Def. 56.1 St. at ¶ 5 (citing Tr. at 1).) Almost a year later on June 23, 2003, just three days before the expiration of the three-year deadline under 42 C.F.R. § 405.1885, Lutheran filed a bare-bones request to reopen the FY 1997 NPR with Empire. (Tr. at 6.) Empire responded, on June 30, 2003, indicating that it would not reopen the NPR, on the ground that Lutheran had presented insufficient information with its request to reopen. In particular, Empire noted that a reopening request must be accompanied by "at a minimum, a listing of eligible days with the request." (Tr. at 5.) Empire stated it would not consider any further requests to reopen because the three-year period in which to file such requests had expired. (Id.)

On August 29, 2003, Lutheran filed suit with this Court, asserting two causes of action. In the first, Lutheran argues that under the Medicare Act, Medicare regulations, and the Administrative Procedure Act, the actions of the Secretary, acting through Empire, in refusing to reopen the reimbursement determination, were arbitrary and capricious. In the second, Lutheran seeks mandamus relief pursuant to 28 U.S.C. § 1361, requesting that this Court order the Secretary to reopen the reimbursement decision or to direct recalculation by the intermediary of Lutheran's DSH adjustment for 1997.

## II. Discussion

### A. Standard of review

Under Fed. R. Civ. P. 12(c), "[a]fter pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings." In deciding a Rule 12(c) motion, "we apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Burnette v. Carothers, 192 F. 3d 52, 56 (2d. Cir. 1999). A complaint should be dismissed "if it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." Patel v. Searles, 305 F. 3d 130, 135 (2d Cir. 2002). Our review "is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts, 369 F.3d 212 (2d Cir. 2004) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 152-54 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999).

The court is required to view the evidence in the light most favorable to the nonmoving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest on "mere allegations or denials" but must instead "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Since the parties have brought to the attention of the Court matters outside the pleadings, the motion will be considered as one for summary judgment.

### B.    First cause of action - Review under the Medicare Act

In its first cause of action, Lutheran seeks review under the provisions of the Medicare Act and 42 U.S.C. § 1395oo(f) and 1395ii of Empire's decision not to reopen its reimbursement decision. Defendant correctly argues that neither provision provides this Court with subject matter jurisdiction over the first cause of action. Section 1395oo(f) permits court review in certain circumstances of a final Board decision. Lutheran does not seek review of any Board decision but rather of the decision of the fiscal intermediary. Lutheran's reliance of Section 1395ii is similarly misplaced. In Your Home Visiting Nurse Services, Inc. v. Shalala, 525 U.S. 449, 456 (1999), the Supreme Court squarely held that the Medicare Act does not provide for judicial review of an intermediary's decision not to reopen a reimbursement decision. Lutheran appears to concede this issue since it did not respond to this point in its brief and presses instead its contention that the Court has mandamus jurisdiction under 28 U.S.C. § 1361. The Court turns to that issue.

### C. Second cause of action - Mandamus Relief

In its second cause of action, Lutheran seeks mandamus relief, under 28 U.S.C. § 1361, to direct the Secretary to reopen the reimbursement decision. The federal mandamus statute provides, that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The granting of a writ of mandamus under 28 U.S.C. § 1361 is an "extraordinary remedy" that "will issue only to compel the performance of 'a clear nondiscretionary duty.'" Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988) (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984)); see also Califano v. Yamasaki, 442 U.S. 682, 698 (1979); Assoc. of Am. Med. Colleges v. Califano, 569 F.2d 101, 111 n.80 (D.C. Cir. 1977) (mandamus "is to be employed only under exceptional circumstances, for courts will intervene to disturb the determinations of administrative officers only in clear cases of illegality").

In order to be entitled to relief under section 1361, a plaintiff must both exhaust administrative remedies, thereby demonstrating he has no adequate remedy at law, and also show that the defendant had a plainly defined and peremptory duty to perform the act in question. Lovallo v. Froehlke, 468 F.2d 340, 343 (2d Cir. 1972) (citing United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543-44 (1937)); see also Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989). Lutheran makes neither of these showings.

Although in this case Lutheran seeks to have this Court direct reopening of Empire's 1997 NPR decision or to have Empire re-calculate the 1997 DSH adjustment, Lutheran's ultimate objective is to have the original 1997 NPR decision reversed and to be awarded additional funds. It is clear that Lutheran had an adequate remedy with which to seek review of

8

Empire's reimbursement determination. Section 1395oo(a) of Title 42 affords providers the opportunity to appeal reimbursement decisions of fiscal intermediaries to the PRRB. By filing a PRRB appeal, Lutheran could have specifically argued that the FY 1997 NPR was not in accordance with HCFA Ruling 97-2, which was decided three years before Empire's reimbursement decision. Furthermore, in its PRRB appeal, Lutheran would have had the opportunity to engage in pre-hearing discovery and to present evidence and testimony at the hearing. See 42 C.F.R. §§ 405.1851 (conduct of PRRB hearing), 405.1853 (prehearing discovery and other proceedings prior to the PRRB hearing), 405.1855 (evidence at PRRB hearing), 405.1857 (subpoenas), 405.1859 (witnesses). Finally, if dissatisfied with the PRRB's decision, Lutheran could have appealed that decision to this Court. See 42 U.S.C. § 1395oo(f)(1). Lutheran failed to avail itself of the PRRB review process. As discussed above, although Lutheran filed an appeal with the PRRB, it failed to timely file its final position paper, resulting in the dismissal of its appeal. Lutheran did not pursue the adequate remedy afforded to it via the PRRB appeal process.

Lutheran's citation to Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C. Cir. 2001), to support its mandamus request is inapposite. HCFA Ruling 97-2, which directed intermediaries to calculate DSH adjustments based on Medicare "eligible" patient days, was issued after the reimbursement determinations at issue in that case. The ruling, therefore, could not have formed the basis of the providers' appeals to the PRRB in Monmouth. However, in this case, HCFA Ruling 97-2 was issued three years before Empire's FY 1997 reimbursement decision. Thus, Lutheran could have remedied a violation of that ruling through standard PRRB appeal procedures.

Lutheran also had the option to request that Empire reopen the determination on the 1997

9

NPR. It is the rejection of that request that precipitated this lawsuit seeking mandamus relief. Lutheran, however, failed to follow the procedures necessary to have its request considered. The hospital was advised a year before the deadline for seeking reopening of the information that was necessary to accompany its request, and for whatever reason, chose not to comply. Instead, it made only a simple request for reopening, bare of any of the requested information, three days before the deadline.

Although return to the administrative process now may indeed be "futile" in that there is no longer an avenue open to challenge the 1997 NPR, that "futility" is a result of plaintiff's own actions. Even if the circumstances as they now exist satisfy the requirement of "no adequate remedy," it is not appropriate to invoke the equitable remedy of mandamus where Lutheran created the futility by failing to adequately pursue an appeal process and a reopening procedure that could have addressed the very concerns underlying this lawsuit. See Pittstown Coal Group, 488 U.S. at 105 (plaintiffs who were aware of the regulation at issue were not entitled to mandamus relief where they could have vindicated their rights if they sought judicial review, but chose not to).

Moreover, Lutheran has not established the second requirement for mandamus relief; namely, that the Secretary or the fiscal intermediary as its agent had a "clear non-discretionary duty" to reopen the reimbursement determination at issue. Lutheran contends that 42 C.F.R. § 405.1885(b) establishes this non-discretionary duty. That section states that a decision "must be reopened and revised if, within the 3 years period" specified in the section, CMS (i) "[p]rovides notice to the intermediary that the intermediary determination. . . is inconsistent with the applicable laws, regulations, CMA ruling, or CMS general instructions in effect. . . at the time the determination or decision was rendered by the intermediary; and (ii) [e]xplicitly directs the

intermediary to reopen and revise the intermediary determination or the intermediary hearing decision." 42 C.F.R. § 405.1885(b). However, it is undisputed that CMS did not "explicitly" direct the intermediary to reopen or revise the determination or decision of the intermediary in this case, making paragraph (b) of 42 C.F.R. § 405.1885 inapplicable.

Lutheran's request for reopening is properly governed by paragraph (a) of 42 C.F.R. § 405.1885. As discussed above, paragraph (a) provides that "[a] determination of an intermediary. . . may be reopened . . . on motion" and "[a]ny such request to reopen must be made within 3 years of the date of the notice of the intermediary or Board hearing decision." 42 C.F.R. § 405.1885(a). Under this section, a decision of the fiscal intermediary to reopen a determination is clearly discretionary, not mandatory. Lutheran, therefore, has not established the non-discretionary duty necessary for this Court to grant mandamus relief.

Lutheran's reliance on the decision of the Court of Appeals for the District of Columbia in Monmouth Medical Center v. Thompson, 257 F.3d 807 (D.C. Cir. 2001), is misplaced. As an initial matter, the court in Monmouth analyzed a different and earlier version of section 405.1885(b). In that earlier regulation, all that was required to mandate reopening was a notification by HCFA that the determination of the intermediary was "inconsistent with the applicable law, regulations, or general instructions issued by the [HCFA]." 42 C.F.R. § 405.1885(b) (1998). There was no requirement of an "explicit" direction to reopen.

Even if, as plaintiff apparently contends, the earlier regulation governed this case, the rationale of Monmouth does not apply to the facts here. The Monmouth court held that HCFA Ruling 97-2 notified intermediaries that DSH adjustments made prior to that ruling were inconsistent with the law, and section 405.1885(b), therefore, imposed a clear, non-discretionary duty to reopen those reimbursement decisions. 257 F.3d at 814. In this case, HCFA Ruling 97-2

11

pre-dated the request to reopen at issue. This is not a case calling for the extraordinary remedy of mandamus, but rather the ordinary situation where a litigant is arguing that the existing rules were incorrectly applied. Mandamus relief is not available whenever a reimbursement decision is allegedly in conflict with an existing HCFA ruling. See Michael Reese Hospital and Med. Ctr., 427 F.3d 436, 444 (7th Cir. 2005) (distinguishing Monmouth and holding that mandamus was not appropriate where HCFA rulings were issued prior to the intermediary determination, and plaintiff "complains merely that the intermediary did not properly apply the law in its determination").

Moreover, interpreting the regulation as requiring reopening in these circumstances would be odds with the entire regulatory frame work. The discretionary language of section 405.1885(a) would be rendered virtually superfluous, as intermediaries would be required to reopen any decision arguably in conflict with any existing HCFA ruling or regulation. Furthermore, such a reading of section 405.1885(b) would undermine the 180-day time restriction on appeal to the Board, as intermediaries would be required to reopen any decision within three years if the provider discovers an HCFA ruling on point, even if that ruling were in existence at the time of the intermediary's initial decision and therefore grounds for appeal to the Board.

Finally, even if the earlier version of 405.1885(b) governed this case and the reasoning of Monmouth was applicable, the Court nonetheless would decline to grant mandamus relief. This Court does not find the reasoning of the Monmouth decision compelling. Rather, the decision of the Tenth Circuit in Bartlett Memorial Med. Ctr. v. Thompson, 347 F.3d 828 (10th Cir. 2003), which rejects the reasoning advanced in Monmouth, is more persuasive. In Bartlett, the court concluded that Rule 97-2 did not constitute notification under § 405.1885(b), and therefore failed to "implicitly" direct the intermediary to reopen its decision. Id. at 838. The court noted that the

12

language of Ruling 97-2 "clearly evinces both the Secretary's belief that his prior interpretation of the DSH provision was not inconsistent with applicable law and his intent that no NPR be reopened on that basis." Id. As Rule 97-2 did not constitute notification by CMS that a decision was "inconsistent with applicable law," fiscal intermediaries had no clear, non-discretionary duty to reopen their reimbursement decisions. Id. at 838-39. The Court agrees with the analysis set forth in Bartlett.

Accordingly, for all of the foregoing reasons, Lutheran's request for mandamus relief is denied.

## CONCLUSION

For the reasons set forth herein, Defendants' motion for judgment on the pleadings, or summary judgment, on both causes of action is granted. The Clerk of the Court is directed to enter judgment in accordance with this Order and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
       September 27, 2007

                                                  Carol Bagley Amon
                                                  United States District Judge